FILED by ___ TM ___ D.C.

Oct 16, 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

# 17-80194-CR-MIDDLEBROOKS/BRANNON
Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 1035

UNITED STATES OF AMERICA

    vs.

**SEALED**

**TOVAH LYNN JASPERSON, a/k/a "Tara,"**
**and**
**ALAN MARTIN BOSTOM,**

            **Defendants.**

_____/

## INFORMATION

The Acting United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

#### The Defendants and Angel's Recovery

1.      The defendants, TOVAH LYNN JASPERSON, a/k/a "Tara," and ALAN MARTIN BOSTOM, were residents of Wellington, Florida, in Palm Beach County, in the Southern District of Florida.  The co-defendants share a familial relationship, that is, defendant TOVAH LYNN JASPERSON, a/k/a "Tara," is the daughter of defendant ALAN MARTIN BOSTOM.

2.      In July 2010, the defendant, ALAN MARTIN BOSTOM, filed and caused the filing of documents with the Florida Secretary of State to create "Angels and Angelmen, LLC."  In August 2010, the name of the limited liability company was changed from "Angels and Angelmen, LLC" to "Angel's House LLC," d/b/a "Angel's Recovery" (hereinafter referred to as "Angel's Recovery").

3.      The defendant, TOVAH LYNN JASPERSON, a/k/a "Tara," later filed and caused the filing of documents with the Florida Secretary of State listing herself as the 100% owner of Angel's Recovery.  Despite the representation to the Secretary of State regarding the change in ownership, defendant ALAN MARTIN BOSTOM continued to be involved in the management of Angel's Recovery and continued to participate in its profits.

4.      The defendants, TOVAH LYNN JASPERSON, a/k/a "Tara," and ALAN MARTIN BOSTOM, also filed and caused the filing of documents with the Florida Secretary of State to create a separate LLC named "Angel's Recovery, LLC."  On June 3, 2014, defendant TOVAH LYNN JASPERSON, a/k/a "Tara," on behalf of Angel's Recovery, LLC, filed and caused the filing of a fictitious name registration with the Florida Secretary of State, providing notice that Angel's Recovery, LLC, owned the fictitious name "Gold River Labs."  The filing gave Angel's Recovery, LLC ownership of the name "Gold River Labs" through December 31, 2019.

5.      Angel's Recovery had multiple locations in Palm Beach County, in the Southern District of Florida, including 11576 Pierson Road, Wellington, Florida, and 222 Professional Way, Wellington, Florida.  Angel's Recovery purported to operate as a licensed "substance abuse service provider" or "treatment center," that is, it offered clinical treatment services for persons suffering from alcohol and drug addiction.  Angel's Recovery offered medication-based treatment for opioid addiction, that is, treatment on a "nonresidential basis which utilize[d] methadone or other approved medication in combination with clinical services to treat persons who are dependent upon opioid drugs."  Fla. Admin. Code § 65D-30.002(16)(m).

6.      At different times, the defendants managed all aspects of Angel's Recovery, including hiring and firing personnel, admitting and discharging patients, and making financial decisions.  TOVAH LYNN JASPERSON, a/k/a "Tara," and ALAN MARTIN BOSTOM were

listed as owners and Chief Executive Officers of Angel's Recovery on the licensing documents filed with the Department of Children and Families ("DCF").

7.      To be properly licensed by the State of Florida, Angel's Recovery was required to have a "medical director," that is, "a physician licensed under Chapter 458 or 459, [Florida Statutes], who has been designated to oversee all medical services of a [substance abuse treatment] provider and has been given the authority and responsibility for medical care delivered by a provider. Fla. Admin. Code § 65D-30.002(37).

8.      The defendants, TOVAH LYNN JASPERSON, a/k/a "Tara," and ALAN MARTIN BOSTOM, hired a person known to the Acting United States Attorney (hereinafter referred to as "Doctor #1") to serve as the medical director of Angel's Recovery.  Doctor #1 had two reported reprimands from the Florida Board of Medicine, was the subject of a third disciplinary proceeding, and was actively abusing prescription opioids and cocaine.

9.      During the period of his employment, Doctor #1 frequently pre-signed prescriptions that were used to dispense controlled substances to patients of Angel's Recovery by other employees.

10.      After several years of contested proceedings, on February 17, 2015, the Florida Board of Medicine issued a Final Order suspending Doctor #1's medical license for four years. Following the suspension, the defendants, TOVAH LYNN JASPERSON, a/k/a "Tara," and ALAN MARTIN BOSTOM, continued to employ Doctor #1 as the medical director of Angel's Recovery, knowing that Doctor #1's license had been suspended. After his license was suspended, Doctor #1 continued to examine and treat some patients at Angel's Recovery, continued to prescribe controlled substances to Angel's Recovery patients, and continued to provide pre-signed prescriptions that allowed other employees of Angel's Recovery to unlawfully provide

prescriptions for controlled substances to Angel's Recovery patients.

### The "Sober Homes"

11.      Substance abuse treatment facilities in Florida that offer inpatient treatment or offer outpatient treatment with a residential housing component are subject to specialized licensing requirements.  Many insurance companies do not provide coverage for inpatient treatment (other than inpatient detoxification) or for residential housing components, so patients are required to pay for their own housing while attending outpatient treatment.

12.      To secure a steady stream of patients, the defendants established illegal kickback/bribe relationships with owners of recovery residences, commonly referred to as "sober homes," in exchange for referring the sober homes' insured residents to Angel's Recovery for treatment.  The defendants provided the money used to purchase or rent several properties used as "sober homes," although the purchase agreements or leases would bear the names of third parties (hereinafter referred to as "nominee owners").

13.      Redemption Sober House, Inc. ("Redemption") was a multi-bed residence in Palm Beach County, Florida, located at 243 N.E. 13th Street, Delray Beach, Florida, that purported to operate as a sober home.  According to corporate records filed with the State of Florida, Michael Bonds was the president of Redemption.  Michael Bonds referred Redemption residents to Angel's Recovery and, in exchange, directly or indirectly received more than $700,000 in payments from Angel's Recovery.

14.      A person known to the Acting United States Attorney, A.J., owned two multi-bed residences in Palm Beach County, Florida, that purported to operate as sober homes.  A.T. Way LLC ("A.T. Way") was located at 120 SW 13th Ave, Boynton Beach, Florida, and Carter Care Recovery ("Carter Care") was located at 315 SW 7th Avenue, Boynton Beach, Florida.  A.J.

received money from the defendants to purchase the properties used as A.T. Way and Carter Care. A.J. referred residents of A.T. Way and Carter Care to Angel's Recovery and, in exchange, directly or indirectly received more than $150,000 in payments from Angel's Recovery.

## Federal Guidelines for Substance Abuse Treatment

15.     The U.S. Department of Health and Human Services, Substance Abuse and Mental Health Services Administration, Center for Substance Abuse Treatment ("SAMHSA") was tasked with establishing and implementing a comprehensive program to improve the provision of treatment and related services to individuals with respect to substance abuse and with protecting the legal rights of individuals who are substance abusers.  42 U.S.C. § 290aa.

16.     "Substance abuse" was defined as "the abuse of alcohol or other drugs."  42 U.S.C. § 290cc-34(4).  "Treatment" meant "the management and care of a patient suffering from alcohol or drug abuse, a condition which is identified as having been caused by that abuse, or both, in order to reduce or eliminate the adverse effects upon the patient."  42 C.F.R. § 2.11.

17.     In addition to substance abuse treatment programs, SAMHSA promulgated guidelines for sober homes.  Sober homes generally did not provide medical care or clinical services to their residents.  When properly managed, sober homes operated as alcohol and drug free living environments for individuals attempting to abstain from alcohol and drugs, including providing a peer support network of individuals in recovery.

## Substance Abuse Treatment in Florida

18.     Substance abuse services in Florida were governed by the "Hal S. Marchman Alcohol and Other Drug Services Act" ("the Marchman Act"), Fl. Stat. § 397.301.  Amongst other things, the Marchman Act made it unlawful for any person or agency to act as a substance abuse service provider unless it was properly licensed.  Fl. Stat. § 397.401(1); Fl. Admin. Code § 65D-

5

300.003(1)(a).   Under the Marchman Act, private substance abuse service providers' policies regarding payment for services had to comply with federal and state law.  Fl. Stat. § 397.431

19.     DCF was tasked with regulating and licensing substance abuse service providers. Fl. Stat. § 397.321.

20.     The Marchman Act also provided guidelines for sober homes/recovery residences, which were defined as "a residential dwelling unit, or other form of group housing that is offered or advertised . . . as a residence that provides a peer-supported, alcohol-free, and drug-free living environment."  Fl. Stat. § 397.311(36).

### Payment for Substance Abuse Treatment

21.     Insurance coverage for substance abuse treatment and testing was available through a number of avenues, including federal health care benefits programs like the Federal Employees Health Benefits Program ("FEHBP"), health plans sponsored by private employers (including the National Railroad Passenger Corporation ("Amtrak") employee health care benefit plans), and health plans offered directly by private insurance companies.  Health plans sponsored by private employers are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, while those sponsored by governmental employers and certain others are exempted from ERISA's jurisdiction.

22.     Both ERISA and non-ERISA health benefit plans, including Affordable Care Act plans, were offered or administered by private insurance companies, including Blue Cross/Blue Shield ("BCBS"), Aetna, Cigna Behavioral Health, Cigna Health & Life Insurance Company, United Behavioral Health, and United Health Group.

23.     Angel's Recovery submitted claims for reimbursement to multiple health benefit plans, including the FEHBP plans, Amtrak's established plans, and private ERISA and non-ERISA health benefit plans (jointly referred to as "the Insurance Plans").

24.     The Insurance Plans were "health care benefit programs," as defined in Title 18, United States Code, Section 24(b), that is "public or private plans or contracts, affecting commerce, under which any medical benefit, item or service is provided to any individual."

25.     Regardless of the type of Insurance Plan held by a patient, the amount of coverage and terms and conditions of billing and payment were governed by the terms of the patient's insurance documents, and the insurance company administering the plan had the authority, responsibility, and discretion to make coverage determinations and to process and make payments on claims.

26.     The "Florida Patient Brokering Act," made it a felony offense for any person, health care provider, or health care facility, including any state licensed substance abuse service provider, to: "(a) Offer or pay any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, to induce the referral of patients or patronage to or from a health care provider or health care facility; (b) Solicit or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for referring patients or patronage to or from a health care provider or health care facility; (c) Solicit or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for the acceptance or acknowledgement of treatment from a health care provider or health care facility; or (d) Aid, abet,

7

advise, or otherwise participate in the conduct prohibited under paragraph (a), paragraph (b), or paragraph (c)." Fla. Stat. § 817.505.

27.     To disguise kickbacks and bribes to patients, the defendants used a separate entity named Angel Watch Foundation, Inc., to pay insurance premiums for patients of Angel's Recovery so that Angel's Recovery could continue to bill the patients' insurance companies for treatment expenses.

28.     Florida law also provided that it was "a material omission and insurance fraud . . . for any service provider, other than a hospital, to engage in a general business practice of billing amounts as its usual and customary charge, if such provider has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge." Fla. Stat. § 817.234(7)(a).

29.     Under the terms of the insurance policies and consistent with state and federal law, the Insurance Plans were only responsible for claims for services that: (a) were "medically necessary" and actually rendered, (b) were provided by a properly licensed service provider, and (c) complied with the terms of the health care plans, including the obligation to pay co-insurance and deductibles.

## Payment for Residing at Sober Homes

30.     Unlike treatment facilities, sober homes generally did not provide medical care or clinical services that could be reimbursed by health insurance.  While there were federal and state guidelines, sober homes were not licensed or funded by state or local governments.  Since sober homes were merely places to live, legitimate sober homes generated income to cover expenses through the collection of weekly or monthly rent paid by their residents, just as with any other landlord-tenant relationship.

**Bodily Fluid Testing**

31.     Bodily fluid testing could be used to detect recent drug or alcohol use by a client by conducting various tests on a client's urine, blood, and saliva.  Urine Analysis or urinalysis ("UA") testing complexity ranged from screening tests – also known as point of care ("POC") testing – which provided instant results, to confirmatory testing, which was sent to a laboratory, for more complex analysis.  Laboratories could also conduct complex analysis on blood and saliva samples.

32.     Like other medical tests, bodily fluid testing could be billed and reimbursed pursuant to the terms of the insurance policy.  The Insurance Plans were only responsible for claims for testing that was "medically necessary," actually performed, properly prescribed, and conducted by a properly licensed service provider, and conducted and billed in compliance with the terms of the health care plan, including the obligation to pay co-insurance.

## COUNT 1
### (Conspiracy to Commit Health Care Fraud - 18 U.S.C. § 1349)

33.     Paragraphs 1-32 of the "General Allegations" section of this Information are re-alleged and incorporated herein.

34.     From on or about February 17, 2015, through on or about September 2, 2015, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**TOVAH LYNN JASPERSON, a/k/a "Tara,"**
**and**
**ALAN MARTIN BOSTOM,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with Doctor #1, Michael Bonds, A.J., and others known and unknown to the Acting United States Attorney to violate Title 18, United States Code, Section 1347, that is, in connection with the delivery of and payment for health care benefits, items, and services, to execute and attempt to

9

execute, a scheme and artifice to: (a) defraud health care benefit programs, as defined by Title 18, United States Code, Section 24(b); and (b) obtain, by means of materially false and fraudulent pretenses, representations, and promises, any of the money and property owned by, and under the custody and control of, health care benefit programs, as defined by Title 18, United States Code, Section 24(b).

## OBJECT OF THE CONSPIRACY

35.    It was the object of the conspiracy for the defendants to unlawfully enrich themselves and others, by defrauding health care benefit programs and obtaining the money of health care benefit programs to which the defendants and their co-conspirators were not entitled.

## MANNER AND MEANS OF THE CONSPIRACY

36.    The manner and means by which the defendants sought to accomplish the object of the conspiracy included, among other things, the following:

a.    The defendants and co-conspirators established sober homes, which were purportedly in the business of providing safe and drug-free residences for individuals suffering from drug and alcohol addiction.

b.    The defendants and co-conspirators created and signed documents that concealed the fact that the defendants had provided the funds used to purchase and lease the sober home properties.

c.    The defendants and co-conspirators provided kickbacks and bribes, in the form of free or reduced rent, insurance premium payments, and other benefits to individuals with insurance who agreed to reside at the sober homes and attend drug treatment, which included regular and random drug testing (typically three or more times per week), so that members of the conspiracy could bill the testing and treatment to the residents' Insurance Plans.

d.      In order to obtain a license to open and operate Angel's Recovery, the defendants filed documentation with DCF listing Doctor #1 as the medical director of Angel's Recovery.  Despite the obligation to maintain a medical director who was a validly licensed physician, the defendants continued to use Doctor #1 as the medical director of Angel's Recovery after Doctor #1's medical license was suspended.

e.      While knowing that Doctor #1's license was suspended, the defendants continued to employ Doctor #1 to evaluate and treat patients at Angel's Recovery and to write prescriptions for controlled substances and bodily fluid testing.

f.      On many occasions, Doctor #1 wrote prescriptions for controlled substances and bodily fluid testing without examining patients and provided pre-signed prescriptions that were filled in by other employees of Angel's Recovery.

g.      Co-conspirators who owned, operated, and managed sober homes referred the residents with insurance to become patients at Angel's Recovery, in return for kickbacks and bribes from the defendants which kickbacks and bribes were often labeled as marketing fees, consulting fees, commissions, and case management fees.

h.      Co-conspirators required the sober home residents to travel to Angel's Recovery multiple times per week to attend treatment sessions and to submit to drug testing, which the defendants and co-conspirators could bill to the Insurance Plans.  To this end, the defendants sent vans to the sober homes to transport the residents to Angel's Recovery.

i.      On some occasions, the defendants and co-conspirators caused employees of Angel's Recovery to falsely document patient files to make it appear as though absent patients had attended treatment, and caused the submission of insurance claims for services that were never rendered.

      j.      Co-conspirator employees and agents of Angel's Recovery, including Doctor #1, ordered and caused the ordering of expensive bodily fluid testing that was not medically necessary, in that (i) Doctor #1 signed prescriptions and statements of medical necessity for confirmatory bodily fluid testing for Angel's Recovery patients when he had not examined the patients prior to prescribing the testing; (ii) Doctor #1 was not a licensed medical doctor at the time he signed the prescriptions and statements of medical necessity; and (iii) the test results were not timely reviewed or used by a doctor or treatment professional in developing or modifying the patients' treatment plans.

      k.      The defendants and co-conspirators prepared and caused the preparation and submission of fraudulent insurance claim forms attesting that the billed amounts qualified for reimbursement, that is, (i) the claims falsely stated that the testing and treatment had been medically necessary and actually rendered when, in truth and in fact, some of the claimed testing and treatment had not been necessary or performed; (ii) the claims failed to disclose that the patients were referred to Angel's Recovery in exchange for kickbacks and bribes; (iii) the claims failed to disclose that some patients had not paid their co-payments and deductibles; (iv) the claims failed to disclose that some of the patients' insurance premiums were paid by the defendants themselves; and (v) the claims failed to disclose that Doctor #1's medical license was suspended and, accordingly, the license of Angel's Recovery was invalid because it did not have a properly licensed medical director.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### (False Statement Related to Health Care Matter – 18 U.S.C. § 1035(a)(1))

37.      From on or about February 17, 2015, through on or about September 2, 2015, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**TOVAH LYNN JASPERSON, a/k/a "Tara,"**
**and**
**ALAN MARTIN BOSTOM,**

in a matter involving health care benefit programs, knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device a material fact in connection with the delivery of health care services, that is, in connection with obtaining and maintaining a license from the Florida Department of Children and Families authorizing Angel's Recovery to provide substance abuse services, the defendants failed to disclose that the Florida Department of Health had suspended the medical license of Doctor #1, who was serving as the Medical Director of Angel's Recovery; in violation of Title 18, United States Code, Sections 1035(a)(1) and 2.


BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY


A. MARIE VILLAFANA
ASSISTANT U.S ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| vs. | |
| TOVAH LYNN JASPERSON, a/k/a "Tara," and ALAN MARTIN BOSTOM, | **CERTIFICATE OF TRIAL ATTORNEY\*** |
| **Defendants.** _____/ | **Superseding Case Information:** |

**Court Division**: (Select One)

Miami _____   Key West _____
FTL _____   WPB __X__   FTP _____

New Defendant(s)        YES _____   NO _____
Number of New Defendants  _____
Total number of counts     _____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:      (Yes or No)      No
   List language and/or dialect      _____

4. This case will take      10-15      days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                                    (Check only one)

   | | | | | |
   |---|---|---|---|---|
   | I | 0 to 5 days | _____ | Petty | _____ |
   | II | 6 to 10 days | _____ | Minor | |
   | III | 11 to 20 days | X | Misdem. | |
   | IV | 21 to 60 days | _____ | Felony | X |
   | V | 61 days and over | | | |

6. Has this case been previously filed in this District Court? (Yes or No)  No
   If yes:
   Judge: _____      Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No)  No
   If yes:   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____
   District of _____

   Is this a potential death penalty case? (Yes or No) _____ Yes      X   No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes      X   No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes      X   No

_____
A. Marie Villafaña
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0018255

\*Penalty Sheet(s) attached                                    REV.9/11/07

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   TOVAH LYNN JASPERSON, a/k/a "Tara"

Case No.:

Count 1:

18 U.S.C. § 1349

Conspiracy to Commit Health Care Fraud

*Max. Penalty: 10 Years' Imprisonment; 3 Years' Supervised Release; $5,906,672.40 Fine and mandatory restitution

Count 2:

18 U.S.C. § 1035(a)(1)

False Statements relating to Health Care Matters

*Max. Penalty: 5 Years' Imprisonment; 3 Years' Supervised Release; $5,906,672.40 Fine and mandatory restitution

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PENALTY SHEET**

Defendant's Name:   ALAN MARTIN BOSTOM

Case No.:

Count 1:

18 U.S.C. § 1349

Conspiracy to Commit Health Care Fraud

*Max. Penalty: 10 Years' Imprisonment; 3 Years' Supervised Release; $5,906,672.40 Fine and mandatory restitution

Count 2:

18 U.S.C. § 1035(a)(1)

False Statements relating to Health Care Matters

*Max. Penalty: 5 Years' Imprisonment; 3 Years' Supervised Release; $5,906,672.40 Fine and mandatory restitution

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: ALAN MARTIN BOSTOM
_____

$1,000,000 Personal Surety Bond
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   A. Marie Villafaña

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s):   Special Agent William Stewart
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)  (ICE) (OTHER)

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| TOVAH LYNN JASPERSON, a/k/a " Tara," | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Alvin Entin, Esq.
*Printed name of defendant's attorney*

_____
*Judge's signature*

JAMES M. HOPKINS, U.S. MAGISTRATE JUDGE
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| ALAN MARTIN BOSTOM, | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Robert Nicholson, Esq.
*Printed name of defendant's attorney*

_____
*Judge's signature*

JAMES M. HOPKINS, U.S. MAGISTRATE JUDGE
*Judge's printed name and title*